1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KELLAN BRYANT MURRAY,                        No.  2:13-cv-0866 AC

12              Plaintiff,

13        v.                                      ORDER

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
15
                Defendant.
16

17   _____

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner") denying his application for a period of disability and disability insurance

20   benefits ("DIB") under Title II of the Social Security Act ("the Act")  The parties' cross-motions

21   for summary judgment are pending.  For the reasons discussed below, the court will deny

22   plaintiff's motion for summary judgment and will grant defendant's cross-motion for summary

23   judgment.

24                          PROCEDURAL BACKGROUND

25          Plaintiff filed an application for DIB on November 3, 2009, alleging disability beginning

26   on April 15, 2009.  Administrative Record ("AR") 117-18.  Plaintiff's application was denied

27   initially and again upon reconsideration.  AR 65-68, 69-73.  On July 28, 2011, a hearing was held

28   before administrative law judge ("ALJ") Trevor Skarda.  AR 35-59.  Plaintiff appeared with

                                              1

attorney representation at the hearing, at which he and a vocational expert, Stephen Schmidt,

testified.  See id.  In a decision dated August 26, 2011, the ALJ found plaintiff not disabled.  AR

17-30.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.   The claimant meets the insured status requirements of the Social
> Security Act through March 31, 2014.
>
> 2.   The claimant has not engaged in substantial gainful activity
> since April 15, 2009, the alleged onset date.
>
> 3.   The claimant has the following severe impairments: Morbid
> obesity, chronic lumbar strain, degenerative disc disease in the left
> knee, depression and attention deficit disorder.
>
> 4.   The claimant does not have an impairment or combination of
> impairments that meets or medically equals the severity of one of
> the listed impairments in 20 CFR 404, Subpart P, Appendix 1.
>
> 5.   After careful consideration of the entire record, I find that the
> claimant has the residual functional capacity to perform sedentary
> work as defined in 20 CFR 404.1567(a) except the claimant is able
> to balance, stoop, kneel, crouch, crawl, and climb ramps and stairs
> on an occasional basis, while being precluded from climbing
> ladders, ropes, and scaffolds.  The claimant is also precluded from
> work involving hazards like dangerous machinery and work at
> unprotected heights.  Finally, the claimant is limited to occasional
> contact with co-workers and the general public.
>
> 6.   The claimant has no past relevant work.
>
> 7.   The claimant was born on March 4, 1983 and was 26 years old,
> which is defined as a younger individual age 18-44, on the alleged
> disability onset date.
>
> 8.   The claimant has a limited education and is able to communicate
> in English.
>
> 9.   Transferability of job skills is not an issue because the claimant
> does not have past relevant work.
>
> 10.   Considering the claimant's age, education, work experience,
> and residual functional capacity, there are jobs that exist in
> significant numbers in the national economy that the claimant can
> perform.
>
> 11.   The claimant has not been under a disability, as defined in the
> Social Security Act, from April 15, 2009, through the date of this
> decision.

AR 17-30.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council

denied review on March 7, 2013, leaving the ALJ's decision as the final decision of the

1   Commissioner of Social Security.  AR 1-3.

2   FACTUAL BACKGROUND

3   Born on March 4, 1983, plaintiff was 26 years old on the alleged onset date of disability

4   and 28 years old at the time of the administrative hearing.  Plaintiff completed the 11th grade of

5   high school after participating in special education classes, and he last worked as a cashier at

6   Taco Bell, in an unspecified role at Target, and as a sign holder / flier distributor for his mother's

7   tax preparation company.  AR 44, 229.  At the time of the administrative hearing, plaintiff, who

8   stands 5'9" tall, weighed approximately 500 pounds.  AR 43.

9   LEGAL STANDARDS

10   The Commissioner's decision that a claimant is not disabled will be upheld if the findings

11   of fact are supported by substantial evidence in the record and the proper legal standards were

12   applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000);

13   Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel,

14   180 F.3d 1094, 1097 (9th Cir. 1999).

15   The findings of the Commissioner as to any fact, if supported by substantial evidence, are

16   conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

17   more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th

18   Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a

19   conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v.

20   N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute

21   substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v.

22   Barnhart, 454 F.3d 1063, 1066 (9th Cir.2006) (citation omitted).

23   Although this Court cannot substitute its discretion for that of the Commissioner, the

24   Court nonetheless must review the record as a whole, "weighing both the evidence that supports

25   and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of

26   Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir.1988); see also Jones v. Heckler, 760 F.2d

27   993, 995 (9th Cir.1985).

28   "The ALJ is responsible for determining credibility, resolving conflicts in medical

3

1   testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)

2   (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation,

3   one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.

4   Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the Court may review only the reasons

5   stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not

6   rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir.2007); see also Connett v. Barnhart, 340 F.3d

7   871, 874 (9th Cir. 2003).

8           The court will not reverse the Commissioner's decision if it is based on harmless error,

9   which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the

10  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th

11  Cir.2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.

12  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

13                                              ANALYSIS

14          Plaintiff seeks summary judgment on the grounds that: (1) the ALJ failed to incorporate or

15  explicitly reject a portion of the opinion of an examining psychologist, and (2) the ALJ

16  improperly rejected the opinion of a physical therapist and instead relied on outdated opinions in

17  determining plaintiff's residual functional capacity ("RFC").  The Commissioner argues that the

18  ALJ's decision is supported by substantial evidence and is free from legal error.

19  A.      Opinion of Examining Psychologist

20          1.      Relevant Background

21          On November 6, 2009, psychologist Sara Bowerman examined plaintiff on referral from

22  the Department of Social Services Disability Division.  AR 229-35.  Following review of

23  plaintiff's social, medical and education / employment history, Dr. Bowerman conducted a mental

24  status exam and administered a number of tests.  She noted that plaintiff had no difficulty

25  comprehending moderately complex questions, he did not require reminders to stay on task, he

26  had adequate memory, and he was cooperative and responsive.  Dr. Bowerman also noted that

27  there was no evidence of exaggeration of symptoms or of malingering.

28          As to the test results, Dr. Bowerman determined that plaintiff has a Verbal Scale IQ of

1    107, a Performance Scale IQ of 98, and a Full Scale IQ of 103, all within the average range. She

2    noted that plaintiff's General Memory is in the low-average range, which she found to be

3    somewhat inconsistent with plaintiff's overall intellectual functioning.

4           Based on the results of the examination, Dr. Bowerman concluded that plaintiff is able to

5    perform work related activities on a consistent basis; he would likely be able to perform simple,

6    concrete and repetitive tasks not requiring complex understanding or communication; and he has

7    mild cognitive impairments that slightly impair his ability to solve problems and to think

8    abstractly. She also noted that plaintiff's ability to concentrate and remember relevant events

9    appeared adequate, as did his abstract thinking, judgment and insight. As for his social skills, Dr.

10   Bowerman found as follows:

11              Mr. Murray is likely have mild to moderate difficulty interacting
               with others in a work related environment. It is believed that some
12             special or additional close supervision would be helpful to assist
               Mr. Murray in interacting with others and improving his job skills
13             and interpersonal communication.

14   AR 234.

15          2.     Legal Standards

16          The weight given to medical opinions depends in part on whether they are proffered by a

17   treating, examining or non-examining doctor. See Lester v. Chater, 81 F.3d 821, 831 (9th Cir.

18   1995). Those physicians with the most significant clinical relationship with the claimant are

19   generally entitled to more weight than those physicians with lesser relationships. Carmickle v.

20   Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008). As such, superior weight

21   should be given to the opinion of a treating source, who has a greater opportunity to know and

22   observe the patient as an individual. See Lester, 81 F.3d at 831; Smolen v. Chater, 80 F.3d 1273,

23   1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight

24   than the opinion of a non-examining physician. See Lester, 81 F.3d at 830; 20 C.F.R. §

25   416.927(d)(1).

26          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

27   considering its source, the court considers the presence of contradictory opinions in the record

28   and whether clinical findings support the opinions. See Lester, 81 F.3d at 829-31. An ALJ may

1    reject the uncontradicted opinion of a treating or examining medical professional only for "clear

2    and convincing" reasons.  Id. at 831.  In contrast, a contradicted opinion of a treating or

3    examining professional may be rejected for "specific and legitimate" reasons that are supported

4    by substantial evidence.  Id. at 830.  While a treating professional's opinion generally is accorded

5    superior weight, if it is contradicted by a supported examining professional's opinion (e.g.,

6    supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews

7    v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751

8    (9th Cir. 1989)).  The ALJ need not give weight to conclusory opinions supported by minimal

9    clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's

10   conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.

11          3.      Analysis

12          While the ALJ gave significant weight to Dr. Bowerman's opinion regarding plaintiff's

13   mild to moderate difficulty interacting with others, AR 25, at issue here is the ALJ's failure to

14   explicitly reject or incorporate that portion of the opinion in which Dr. Bowerman stated that

15   some special or additional close supervision would be helpful to assist plaintiff in interacting with

16   others and improving his job skills and interpersonal communication.  In addressing plaintiff's

17   social skills, the ALJ determined that plaintiff should be limited to occasional contact with co-

18   workers and the general public.  AR 23.  The ALJ did not include Dr. Bowerman's suggestion of

19   on-the-job assistance in the RFC, or mention it in discussion of the medical evidence relevant to

20   the RFC.

21          Plaintiff argues that the limitation of special or additional close supervision would have

22   precluded work entirely based on a response given by the vocational expert during the

23   administrative hearing:

24                  [Plaintiff's Attorney]: With a follow up to hypothetical two, tell me
                    if this is too general to answer, but, if the person also required
25                  additional close supervision during the work day . . .

26                  ALJ: Defined as? A supervisor checking the work a certain number
                    of times a day?
27
                    [Plaintiff's Attorney]: Yes, checking the work maybe two or three
28                  times as often as another employee, an average employee.

[Vocational Expert]: That would preclude competitive employment.

AR 58.  The court notes that this exchange concerns plaintiff's need to have a supervisor check his work performance multiple times a day, whereas the crux of plaintiff's argument here is that additional supervision is needed to address his social functioning difficulties.  This argument is therefore unconvincing.

The Commissioner contends that there is no error.  Defendant argues first that Dr. Bowerman did not say that additional close supervision was required for plaintiff to work, only that it would be helpful.  Defendant is correct.  See AR 234 ("It is believed that some special or additional close supervision would be helpful…")  Dr. Bowerman's report cannot reasonably be read to opine that plaintiff could only work at all with close supervision.  Rather, she stated plainly that such supervision might *improve* his ability to get along with and communicate with others.  Id.

Defendant argues second that the suggested accommodation does not constitute a functional assessment, both because it is not a limitation and because it is not attributable to a medical impairment.  The court agrees that Dr. Bowerman's suggestion for improved functioning is not itself a functional assessment or a limitation.  Dr. Bowerman's functional assessment regarding social skills was that plaintiff is impaired to a mild to moderate degree in his ability to interact with others in a work environment.  Id.  Based on this opinion, the ALJ appropriately found that plaintiff should be limited to only occasional contact with co-workers and the general public.  AR 23.  That Dr. Bowerman believed additional assistance might improve plaintiff's social functioning, potentially rendering such limitation unnecessary in the future, does not support incorporation of a further limitation in the RFC.

In sum, Dr. Bowerman's comment about assistance that might be "helpful" for "improvement" in plaintiff's interpersonal functioning does not constitute a medical opinion that the ALJ was obligated to address in formulating the RFC.  Cf. Lester, 81 F.3d at 831 (ALJ must provide "clear and convincing" reasons for failing to credit a medical opinion).  The comment was a post-script to Dr. Bowerman's opinion about plaintiff's impairments, not an additional finding of impairment or necessary limitation.  Accordingly, the court finds no error.

7

1    Even if the ALJ erred by not specifically discussing Dr. Bowerman's suggestion and

2   explaining his reasons for rejecting it, remand would not be available because any error is

3   harmless.  See Carmickle v. Comm'r, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ

4   errs in not providing any reasons supporting a particular determination, the error is harmless if no

5   reasonable ALJ could have reached a different conclusion had the error not occurred).  Dr.

6   Bowerman's substantive opinion was that plaintiff would likely have mild to moderate difficulty

7   interacting with others.  The undersigned finds that the ALJ's RFC sufficiently incorporated this

8   assessment by limiting plaintiff to occasional contact with co-workers.  The fact that additional

9   accommodations might permit plaintiff to improve his functioning does not support a more

10   restrictive RFC.  No other medical opinion supported a more restrictive RFC.  Accordingly, no

11   reasonable ALJ could have reached a different result.

12   B.    Opinion of Physical Therapist

13    Plaintiff next argues that the ALJ erred in rejecting a more recent functional assessment

14   made by a physical therapist in favor of older assessments made by a State agency examiner and a

15   State agency consultant.

16    1.    Relevant Background

17    On July 21, 2011, physical therapist Mary K. Barry performed a functional evaluation of

18   plaintiff on referral from Dr. Cha Choukao Thao.  AR 375-76.  Barry conducted tests of

19   plaintiff's strength and mobility and ultimately gave the following assessment:

20        Patient demonstrates significant functional limitations including
         early fatigability with bed mobility, gait and lifting.  He
21        demonstrates early diaphoresis, shortness of breath and stress to the
         cardiovascular system with all mobility.  He demonstrates
22        decreased pain-free lumbar spine active range of motion and limited
         lifting and carrying capacity secondary to poor lumbar spine muscle
23        strength and endurance and possible underlying spinal pathology.
         Limited left knee joint mobility, range of motion, pain and body
24        habitus contribute to gait deviations and fall risk. Obesity,
         depression, generalized deconditioning, bilateral lower extremity
25        and low back orthopedic pathologies contribute to overall
         functional limitations. Presentation is consistent with reported
26        functional capacity / work limitations.

27   AR 376.

28    Although a physical therapist is considered a non-acceptable medical source, the ALJ

8

1    considered Barry's opinion and gave it reduced weight due to internal inconsistencies and

2    reliance on plaintiff's subjective complaints.  AR 28.  Per the ALJ, Barry's own findings

3    acknowledge that plaintiff ambulates without the use of an assistive device, and she speculates

4    that plaintiff's lumbar range of motion and limited lifting and carrying capacity is secondary to

5    poor lumbar muscle strength and endurance with a possible underlying spinal pathology.

6         While giving reduced weight to Barry's assessment, the ALJ gave great weight to the

7    opinion of examining State agency consultant, Dr. Joseph M. Garfinkel, who examined plaintiff

8    on January 25, 2010.  AR 26-27, 236-42.  At this appointment, plaintiff weighed approximately

9    490 pounds, had a history of hypertension though he denied taking any medication for it,

10   complained that his feet and ankles hurt, said that he is able to talk for about a quarter of a mile

11   before he has to stop; and admitted that he does not use an assistive device to ambulate.  Dr.

12   Garfinkel conducted a complete physical examination of plaintiff, indicating full range of motion

13   in the lower extremities though with pain, grossly normal range of motion in the upper

14   extremities, 5/5 strength in all extremities, and normal neurology.  Dr. Garfinkel's impression was

15   that plaintiff suffered from severe, morbid obesity, hypertension, and chronic back pain, possibly

16   chronic lumbosacral strain.  He provided the following medical source statement: "The claimant

17   can lift and carry 50 pounds occasionally and 25 pounds frequently.  The claimant can stand and

18   walk for 6 hours in an 8-hour day. The claimant can sit for 6 hours in an 8-hour day. There are no

19   postural, manipulative, visual, communicative or environmental limitations."

20        The ALJ also gave great weight to the assessment provided by State agency consultant,

21   Dr. D. Rose.  AR 28.  On February 9, 2010, Dr. Rose reviewed plaintiff's medical record and

22   functional information in considering plaintiff's allegations of morbid obesity, dyslexia, chronic

23   back pain, cognitive problems, and swollen lower extremities.  AR 264-66.  Of the medical

24   records reviewed, one dated January 2010 reflected that plaintiff weighed over 490 pounds.  On

25   review, Dr. Rose determined that the objective evidence supports plaintiff's subjective symptoms

26   and that plaintiff was credible.  Despite plaintiff's obesity, Dr. Rose noted that the objective

27   evidence suggested a full medium RFC, though he ultimately suggested a sedentary RFC with

28   appropriate environmental limitations.  On reconsideration one month later, Dr. Rose reviewed

9

1    additional medical records, including bilateral knee x-rays, but concluded that there was no

2    change in his prior decision and sedentary RFC.  AR 265.

3         Also on February 9, 2010, Dr. Rose completed a Physical Residual Functional Capacity

4    Assessment.  AR 243-47.  Dr. Rose determined that plaintiff could frequently lift and/or carry up

5    to 10 pounds; stand and/or walk at least 2 hours in an 8-hour workday; sit for about 6 hours in an

6    8-hour workday; and push / pull with no restrictions.  Dr. Rose further opined that that plaintiff

7    could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, though he

8    could never climb ladders, ropes or scaffolds.  Though Dr. Rose found that plaintiff had no

9    manipulative, visual, communicative or environmental limitations, the doctor did note that

10   plaintiff should not work at unprotected heights or around dangerous machinery and should not

11   walk on uneven terrain due to extreme super morbid obesity.

12        2.   Analysis

13        Plaintiff contends that the ALJ erred in giving great weight to the State agency doctors

14   because their assessments do not take into consideration the increase in plaintiff's weight and the

15   worsening of his knees by July 2011, factors which Barry's assessment considered.  Although

16   plaintiff acknowledges that a physical therapist is not considered an acceptable medical source, he

17   argues that the opinion should be considered as an "other source" and therefore given greater

18   weight.

19        Medical sources are divided into two categories: "acceptable" and "not acceptable."  20

20   C.F.R. § 404.1502.  Acceptable medical sources include licensed physicians and psychologists.

21   20 C.F.R. § 404.1502.  Medical sources classified as "not acceptable" include, but are not limited

22   to, nurse practitioners, therapists, licensed clinical social workers, and chiropractors. SSR 06–03p,

23   at *2.

24
                   With the growth of managed health care in recent years and the
25                 emphasis on containing medical costs, medical sources who are not
                   acceptable medical sources, such as nurse practitioners, physician
26                 assistants, and licensed clinical social workers, have increasingly
                   assumed a greater percentage of the treatment and evaluation
27                 functions previously handled primarily by physicians and
                   psychologists. Opinions from these medical sources, who are not
28                 technically deemed acceptable medical sources under our rules, are
                   important and should be evaluated on key issues such as

10

1    impairment severity and functional effects, along with the other
     relevant evidence in the file.

2

3    SSR 06-03p, at * 3.

4           Factors the ALJ should consider when determining the weight to give an opinion from

5    these "important" sources include: the length of time the source has known the claimant and the

6    number of times and frequency that the source has seen the claimant; the consistency of the

7    source's opinion with other evidence in the record; the relevance of the source's opinion; the

8    quality of the source's explanation of his opinion; and the source's training and expertise.  SSR

9    06-03p, at *4.

10          Although there is a distinction between what an adjudicator must
            consider and what the adjudicator must explain in the disability
11          determination or decision, the adjudicator generally should explain
            the weight given to opinions from these "other sources," or
12          otherwise ensure that the discussion of the evidence in the
            determination or decision allows a claimant or subsequent reviewer
13          to follow the adjudicator's reasoning, when such opinions may have
            an effect on the outcome of the case.
14

15   SSR 06-03p, at *6.

16          Whether a physical therapist's opinion should be considered an acceptable medical source

17   is unsettled.  In a somewhat related context, the Ninth Circuit has held that if a nurse practitioner

18   works closely with a physician, the nurse practitioner's opinion may be considered as part of the

19   team and treated as an acceptable medical source.  See Taylor, 659 F.3d at 1234 (citing Gomez v.

20   Chater, 74 F.3d 967, 971 (9th Cir. 1996)).  This holding has been limited, and the Ninth Circuit

21   has yet to determine whether it remains good law as it relies on an outdated statute.  See Molina

22   v. Astrue, 674 F.3d 1104, 1111 n.3 (9th Cir. 2012).  Here, however, plaintiff argues that a

23   physical therapist, who examined plaintiff only one time and with no indication that she was part

24   of a team that treated plaintiff, should be considered an acceptable medical source.  Plaintiff cites

25   to no case, nor has the undersigned found any, where the opinion of an "other" medical source,

26   such as a physical therapist, has been deemed an "acceptable" medical source.  See 20 C.F.R. §§

27   416.902, 416.913.  Instead, the holding of these cases has been limited, and other district courts

28   have been conservative in their treatment of nurse practitioners as an acceptable medical source.

1    See e.g., Cruise v. Astrue, 2012 WL 5037257 (D. Or. Sept. 28, 2012); Davis v. Astrue, 2012 WL

2    3011223 (N.D. Cal. Jul. 23, 2012); Johnson v. Colvin, 2013 WL 2643305 (E.D. Cal. Jun. 12,

3    2013).  Indeed, as in other cases addressing this issue, there is no evidence in this case that the

4    physical therapist was in fact part of a treatment team.  Other than a doctor's referral to the

5    physical therapist, there is no indication that the physical therapist was "working closely with,

6    and under the supervision of [a physician], [for] her opinion . . . to be considered that of an

7    'acceptable medical source.'"  Taylor, 659 F.3d at 1234 (citing Gomez, 74 F.3d at 971).

8    Providing a one-time evaluation of plaintiff is not the type of close working relationship between

9    providers that has been held to meet this limited exception.  Therefore, regardless of whether

10   Gomez remains good law, the circumstances here do not qualify, and the ALJ did not err in

11   limiting the physical therapist's evaluation.

12       The ALJ considered the opinion of the physical therapist as an "other source," which may

13   be rejected if the ALJ "furnishes reasons germane to the particular witness."  Dodrill v. Shalala,

14   12 F.3d 915, 919 (9th Cir. 1993).  Here, the ALJ gave reduced weight to Barry's opinion because,

15   first, her report contained internal inconsistencies.  Although plaintiff asserts that the ALJ failed

16   to cite to any inconsistencies, the ALJ specifically referenced Barry's recognition that plaintiff

17   ambulates without an assistive device despite his claim that he could not stand for longer than one

18   minute without pain and is unable to walk at all without pain.  Additionally, Barry speculated that

19   the cause of plaintiff's limited lumbar range of motion and ability to lift and carry is secondary to

20   poor lumbar muscle strength and endurance with a possible underlying spinal pathology.  See

21   Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (upholding ALJ's rejection of treating

22   doctor's opinion that was internally inconsistent); Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th

23   Cir. 1995) (affirming rejection of treating doctor's opinion expressed in letter that was

24   inconsistent with doctor's own findings); and Magallanes, 881 F.2d at 751-54 (upholding ALJ's

25   rejection of treating doctor's opinion that was contradicted by evidence in the record).  Moreover,

26   the ALJ noted that Barry's opinion was based on plaintiff's discounted subjective testimony, and

27   plaintiff here does not challenge the ALJ's credibility finding.  Where credibility is "properly

28   discounted," testimony relying on such credibility may be disregarded.  Tonapetyan v. Halter, 242

12

1  F.3d 1144, 1149 (9th Cir. 2001); Morgan, 169 F.3d at 602 (9th Cir. 1999) (internal citation

2  omitted).

3         Insofar as plaintiff argues that the ALJ failed to consider the tests administered by Barry

4  and Barry's opinion regarding plaintiff's worsening condition, the ALJ indicated that Barry's

5  notes and plaintiff's presentation were consistent with reported functional capacity / work

6  limitations.  Regardless, the ALJ gave reduced weight to this opinion for the aforementioned

7  reasons, which the court has found adequate.  Plaintiff also argues that the ALJ failed to consider

8  Barry's opinion that plaintiff's condition had worsened, as evidenced by plaintiff's weight gain to

9  over 500 pounds and two May 2010 x-rays revealing disc degenerative changes in plaintiff's back

10  and a dislocated patella.  See AR 313-14  But SSR 06-03p provides that "Information from . . .

11  'other sources' cannot establish the existence of a medically determinable impairment.  Instead,

12  there must be evidence from an 'acceptable medical source' for this purpose."  And "only

13  'acceptable medical sources' can give us medical opinions."  See 20 CFR 404.1527(a)(2) and

14  416.927(a)(2).  In this case, no acceptable medical source has opined that plaintiff's condition

15  worsened from early-2010, when Dr. Garfinkel and Dr. Rose assessed plaintiff's functional

16  limitations, to July 2011, when Barry examined plaintiff.  In fact, not once during plaintiff's

17  seven medical appointments following the May 2010 x-rays did a doctor opine that plaintiff's

18  condition had worsened, even though the x-rays were undeniably considered by at least one of

19  plaintiff's three treating physicians[1] and plaintiff's obesity was referenced by all.  See AR 301-

20  310.  Furthermore, while it is true that neither Dr. Garfinkel nor Dr. Rose considered the May

21  2010 x-rays or other medical records that were submitted by plaintiff after these two doctors'

22  assessments, the ALJ did consider them when assessing plaintiff's functional limitations, and

23  plaintiff does not argue that the ALJ erred in his consideration of these records.  See AR 27.  The

24  court therefore finds no error.

CONCLUSION

26         Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

27  _____

28  [1] Interestingly, at this appointment plaintiff indicated that he was not experiencing any pain.  See AR 310.

13

1    1.   Plaintiff's motion for summary judgment is denied; and

2    2.   The Commissioner's motion for cross-motion for summary judgment is granted.

3  DATED: May 19, 2014

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE